## NIELSEN *v.* STATE OF OREGON.

ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.

No. 593.   Argued January 18, 19, 1909.—Decided February 23, 1909.

The concurrent jurisdiction given by Congress to the States of Oregon and Washington over the Columbia River, by the acts of March 2, 1853, c. 90, 10 Stat. 172, and of February 14, 1859, c. 33, 11 Stat. 383, extends to civil as well as criminal matters, and is broadly a grant of jurisdiction to each State. *Wedding* v. *Meyler*, 192 U. S. 573.

In determining the effect of a grant of concurrent jurisdiction this court confines itself to the precise questions presented.

Where two States have concurrent jurisdiction, the one first acquiring jurisdiction may prosecute and punish for an act which is *malum in se* and punishable by the laws of both States, and the judgment is a finality so that the person prosecuted cannot be again tried in either State. But this rule does not apply to those acts which are prohibited in only one of the States.

Where two States have concurrent jurisdiction over the same territory which is partly located in one State and partly in the other, one State cannot prosecute a person for an act *malum prohibitum* by its own laws, and which was committed in territory within the other State by authority of the latter; and so held, that one holding a purse net license from the State of Washington cannot be prosecuted for using such net on the Washington side of the Columbia River in the courts of Oregon for violating the statutes of that State prohibiting the use of such nets.

*Quære,* whether such person could be prosecuted in the courts of Oregon for using such nets on the Oregon side of the river; and *quære* whether, where concurrent jurisdiction exists, prosecutions should be in the name of both States.

95 Pac. Rep. 720, reversed.

PLAINTIFF in error was convicted in a justice's court of the precinct of Astoria, Clatsop County, Oregon, of maintaining

and operating a purse net on the Columbia River, contrary to the statutes of Oregon. This conviction was, by proper proceedings, taken to the Supreme Court of the State and the judgment affirmed. 95 Pac. Rep. 720. From that decision the case has been brought here on error.

According to the agreed statement of facts, plaintiff in error was an actual and *bona fide* resident and inhabitant of the State of Washington and a citizen of the United States. He had a license from the Fish Commissioner of Washington to operate a purse net on the Columbia River, and was on said river, within the limits of the State of Washington, operating such a purse net at the time he was arrested and prosecuted in the courts of Oregon.

By § 1 of the act of Congress of March 2, 1853, c. 90, 10 Stat. 172, all that part of the Territory of Oregon lying north of the "main channel of the Columbia River" was organized into the Territory of Washington, and by § 21 of the same act it is provided "that the Territory of Oregon and the Territory of Washington shall have concurrent jurisdiction over all offenses committed on the Columbia River, where said river forms the common boundary between said territories." Section 1 of the act of Congress admitting Oregon into the Union (act of February 14, 1859, c. 33, 11 Stat. 383), after describing in detail the boundaries of the State, provides, "including jurisdiction in civil and criminal cases upon the Columbia River and Snake River, concurrently with States and Territories of which those rivers form a boundary in common with this State." And in § 2 it is said "the State of Oregon shall have concurrent jurisdiction on the Columbia and all other rivers and waters bordering on the said State of Oregon so far as the same shall form a common boundary to said State, and any other State or States now or hereafter to be formed or bounded by the same."

The legislative assembly of Oregon passed an act, the first section of which is as follows:

"Sec. 1. It shall hereafter be unlawful to operate or main-

tain within any of the rivers of this State or of the Columbia River, or in the Pacific Ocean within three miles of the mouths of any of the rivers of this State, or of the Columbia River, any purse net or other like seine for the purpose of catching or taking salmon or other anadromous fish or sturgeon."

The second section makes one violating any of the provisions of the act guilty of a misdemeanor, and prescribes the penalty. Sess. Laws Oregon, 1907, p. 154. On the other hand, Washington passed an act (Sess. Laws Wash., 1899, p. 194), the second section of which reads as follows:

"Sec. 2. The use of pound nets, traps, weirs, fish wheels and other fixed appliances, and purse nets, drag seines, and other seines for catching salmon, is hereby authorized in all the waters of this State wherein the same is not prohibited by section 1, subject to the regulation and license hereinafter provided for or otherwise required by law, and the use of the set nets, gill or drift nets, subject to said license and regulation for said purpose, is authorized in all the waters of this State, except as otherwise provided by law. . . ."

The prohibition in section 1 referred to does not include the Columbia River. Section 6 of the same act fixes the license fees for all first-class purse seines at $50 and all second-class purse seines at $25.

*Mr. E. C. Macdonald,* with whom *Mr. John D. Atkinson, Mr. C. C. Fulton, Mr. S. H. Piles, Mr. W. P. Bell, Mr. H. M. Brooks* and *Mr. J. B. Alexander* were on the brief, for plaintiff in error:

The term " concurrent jurisdiction," as used in the act of Congress herein involved, means that the two sovereignties have jurisdiction over common territory when both act in conjunction as to the laws concerning the common territory. That is, when the two States of Washington and Oregon pass the same or similar laws which define what shall be a crime if committed on either the Washington or Oregon side of the Columbia River, then they have enacted concurrent legislation, and

thereupon the authorities of either State are empowered to enforce its laws by arresting any person who commits a crime on any part of the Columbia River over which the concurrent jurisdiction of the two States lies. But until the two States have passed the same, or similar, laws, neither State can enforce its laws, at least across its boundary, and act within the territorial limits of another State. *In re Mattson,* 69 Fed. Rep. 535, 542; *Ex parte Des Jeiro,* 152 Fed. Rep. 1004; *Roberts* v. *Fullerton,* 117 Wisconsin, 222 (93 N. W. Rep. 1111); *Central R. R. Co. of N. J.* v. *Jersey City* (N. J.), 56 Atlantic Rep. 239.

The State of Oregon cannot arrest and punish one as an offender against her laws who was never, until his arrest, within the State of Oregon, and for an act which he had been specifically authorized to do. The definition of concurrent jurisdiction contended for by the State of Oregon in this case would lead to interminable controversies.

*Mr. A. M. Crawford,* Attorney General of the State of Oregon, with whom *Mr. I. N. Van Winkle* was on the brief, for defendant in error:

Jurisdiction unqualified, when applied to territory, is the sovereign authority to make, decide on, and execute laws. *Wedding* v. *Meyler,* 192 U. S. 573, 584, 585, approving *Arnold* v. *Shields,* 5 Dana (Ky.), 23; *Daniels* v. *Tearney,* 102 U. S. 415, 418, holding jurisdiction is only "The right to hear and determine." See also *Grignon's Lessee* v. *Astor,* 2 How. 318, 337; *Cornett* v. *Williams,* 20 Wall. 226, 249; Brown on Jurisdiction, 2d ed., § 2; 11 Cyc., p. 659; 2 Rawle's Revision Bouvier's Law Dict. 57; Anderson's Law Dict. 580; 1 Abbott's Law Dict. 671.

When a State or any sovereign power acquires jurisdiction over any territory, and that without conditions or limitations, the sovereign is vested with the authority to make, interpret and execute the laws for that territory.

The words "concurrent jurisdiction," as used in the act admitting Oregon into the Union, mean like authority conferred on each sovereign at the same time, over the same place, ob-

ject or thing, including the authority to enforce its commands or decrees over the same. Sections 1 and 2, act admitting Oregon, 11 Stat. 383; 1 B. & C. Codes, 73; *Re The Annie M. Smull*, 2 Sawyer, 226; Fed. Cas. No. 423; *Carlisle* v. *State*, 32 Indiana, 55, 56; *Sherlock* v. *Alling*, 44 Indiana, 184, 193; *Iowa* v. *Mullen*, 35 Iowa, 199, 201, 204; *Minnesota* v. *George*, 60 Minnesota, 503, 505; *Wedding* v. *Meyler*, 192 U. S. 573, 581; *Ohio* v. *Stevens*, 2 West. Law Jour. 66, reversed on another point, 4 Ohio, 386; *Arnold* v. *Shields*, 5 Dana (Ky.), 20, 23; *McFall* v. *Commonwealth*, 2 Metcalf (Ky.), 394, 396; *Memphis & Cincinnati Packet Co.* v. *Pikey*, 142 Indiana, 305, 308; *Welsh* v. *State*, 126 Indiana, 71, 74, 75; Rorer on Interstate Law, Ch. 34, Subd. 3, p. 337; 2 Rawle's Revision Bouvier's Law Dict. 57.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

By the legislation of Congress the Columbia River is made the common boundary between Oregon and Washington, and to each of those States is given concurrent jurisdiction on the waters of that river. How that jurisdiction is to be exercised, what limitations there are, if any, upon the power of either State, is not in terms prescribed. It is true in the first section of the act admitting Oregon the jurisdiction was apparently limited to "civil and criminal cases," but in the second section of that act there was given in general terms "concurrent jurisdiction." In *Wedding* v. *Meyler*, 192 U. S. 573, 584, construing the term "concurrent jurisdiction," as given to Kentucky and Indiana over the Ohio River, this court, reversing the Court of Appeals of Kentucky, said:

"Concurrent jurisdiction, properly so-called, on rivers is familiar to our legislation, and means the jurisdiction of two powers over one and the same place. There is no reason to give an unusual meaning to the phrase. See *Sanders* v. *St. Louis & New Orleans Anchor Line*, 97 Missouri, 26, 30; *Opsahl* v. *Judd*, 30 Minnesota, 126, 129, 130; *J. S. Keator Lumber*

*Company* v. *St. Croix Boom Corp.*, 72 Wisconsin, 62, and the cases last cited.

"The construction adopted by the majority of the Court of Appeals seems to us at least equally untenable. It was held that the words 'meant only that the States should have leg-' islative jurisdiction.' But jurisdiction, whatever else or more it may mean, is *jurisdictio*, in its popular sense of authority to apply the law to the acts of men. *Vicat Vocab.*, *sub.* v. See *Rhode Island* v. *Massachusetts*, 12 Pet. 657, 718. What the Virginia compact most certainly conferred on the States north of the Ohio, was the right to administer the law below low-water mark on the river, and, as part of that right, the right to serve process there with effect. *State* v. *Mullen*, 35 Iowa, 199, 205, 206."

Undoubtedly one purpose, perhaps the primary purpose, in the grant of concurrent jurisdiction was to avoid any nice question as to whether a criminal act sought to be prosecuted was committed on one side or the other of the exact boundary in the channel, that boundary sometimes changing by reason of the shifting of the channel. Where an act is *malum in se* prohibited and punishable by the laws of both States, the one first acquiring jurisdiction of the person may prosecute the offense, and its judgment is a finality in both States, so that one convicted or acquitted in the courts of the one State cannot be prosecuted for the same offense in the courts of the other. But, as appears from the quotation we have just made, it is not limited to this. It extends to civil as well as criminal matters, and is broadly a grant of jurisdiction to each of the States.

The present case is not one of the prosecution for an offense *malum in se*, but for one simply *malum prohibitum*. Doubtless the same rule would apply if the act was prohibited by each State separately, but where as here the act is prohibited by one State and in terms authorized by the other, can the one State which prohibits, prosecute and punish for the act done within the territorial limits of the other? Obviously, the grant

of concurrent jurisdiction may bring up from time to time many and some curious and difficult questions, so we properly confine ourselves to the precise question presented. The plaintiff in error was within the limits of the State of Washington, doing an act which that State in terms authorized and gave him a license to do. Can the State of Oregon, by virtue of its concurrent jurisdiction, disregard that authority, practically override the legislation of Washington, and punish a man for doing within the territorial limits of Washington an act which that State had specially authorized him to do? We are of opinion that it cannot. It is not at all impossible that in some instances the interests of the two States may be different. Certainly, as appears in the present case, the opinion of the legislatures of the two States is different, and the one State cannot enforce its opinion against that of the other, at least as to an act done within the limits of that other State. Whether, if the act of the plaintiff in error had been done within the territorial limits of the State of Oregon, it would make any difference we need not determine, nor whether, in the absence of any legislation by the State of Washington authorizing the act, Oregon could enforce its statute against the act done anywhere upon the waters of the Columbia. Neither is it necessary to consider whether the prosecution should be in the names of the two States jointly. It is enough to decide, as we do, that for an act done within the territorial limits of the State of Washington under authority and license from that State one cannot be prosecuted and punished by the State of Oregon.

There is little authority upon this precise question, but see *In re Mattson,* U. S. Circuit Court for the District of Oregon, 69 Fed. Rep. 535, and *Ex parte Desjeiro,* same court, 152 Fed. Rep. 1004. See also *Roberts* v. *Fullerton,* 117 Wisconsin, 222; Rorer on Interstate Law, p. 438, and following.

*The judgment of the Supreme Court of the State of Oregon is reversed, and the case remanded for further proceedings not inconsistent with this opinion.*