Sandra BROCK, Personal Representative of the Estate of Albert Brock, Deceased, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Respondent.

Jack THOMPSON, Personal Representative of the Estate of Jack Kennedy Thompson, Deceased,

v.

UNITED STATES of America, Defendant-Respondent.

No. 77–2654.

United States Court of Appeals, Ninth Circuit.

April 24, 1979.

Allen T. Murphy, Jr., Portland, Or., for plaintiff-appellant.

Sidney I. Lezak, U. S. Atty., Charles H. Turner, Asst. U. S. Atty., Portland, Or., for defendant-respondent.

Before WRIGHT and GOODWIN, Circuit Judges, and BRUCE R. THOMPSON, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Plaintiffs, personal representatives of two iron workers killed while working on the Bonneville Dam, appeal from a summary judgment in favor of defendant United States. We affirm.

The Bonneville Dam, owned and operated by the United States, spans the Columbia River between Oregon and Washington. In 1970, the United States contracted with Pacific Ventures, Inc. for specified modifications of the fish ladder facilities on both the Oregon and Washington sides of the dam.

Brock and Thompson, iron workers employed with Pacific Ventures, were working on scaffolding suspended from the Washington-North Shore Facility when a nut securing the scaffolding loosened. The workers fell to their deaths, landing on a concrete deck which normally would have been covered by Columbia River waters.[1]

Plaintiffs, Oregon residents, brought a wrongful death action against the Washington corporations which manufactured and distributed the scaffolding. They also sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b).

■ The government's alleged negligence occurred in the State of Washington. Plaintiffs contend that Oregon has jurisdiction of the area where the negligence occurred under the Oregon Admission Act of 1859, 11 Stat. 383, which gives Oregon and Washington concurrent jurisdiction over the Columbia River. Therefore, they argue, Oregon law should be applied. The United States moved for summary judgment, alleging that under the FTCA Washington law applied because the accident and alleged negligence occurred in Washington. Plaintiffs acknowledge that the government is not subject to liability under Washington law.[2]

■ The court granted summary judgment on the ground that the FTCA requires federal courts to apply the law of the state in which the accident occurred.[3] Consequently, Washington law applied.

---

* Of the District of Nevada.

1. The government conceded that water, normally diverted from the Columbia River, was channeled into the area where Brock and Thompson fell.

2. See Campbell v. United States, 493 F.2d 1000 (9th Cir. 1974). Under Oregon law, the government may be subject to liability under the Oregon Employers Liability Act, Or.Rev.Stat. § 14.-035.

3. The FTCA actually requires federal courts to apply the law of the place in which the negligent act or omission occurred and not the place in which the act or omission had its "operative effect." Richards v. United States, 369 U.S. 1, 10, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); Leaf v. United States, 588 F.2d 733, 735 (9th Cir. 1978).

Claims against the other parties were dismissed on other grounds and those dismissals were not appealed. Plaintiffs appeal only that portion of the court's order granting the government's motion for summary judgment.

■ This is a case of first impression involving construction of § 1346(b) of the FTCA:

[T]he district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The question to be decided is what law a federal district court should apply in an action brought under § 1346(b) when an act of negligence occurs in an area where two states exercise concurrent jurisdiction.

Plaintiffs argue that "law of the place" should be construed to mean the law of the state which has jurisdiction over the place where the act or omission occurred. The government reads the phrase as meaning the law of the state in which the negligence occurred. We adopt the latter interpretation.

■ Congress apparently did not explicitly consider the issue presented by the facts of this case.[4] The legislative materials indicate fairly clearly, however, that in requir-

ing FTCA suits to be brought "in accordance with the law of the place where the act or omission occurred," Congress had in mind the law of the state where the negligence occurred.

In response to questioning by Congressman Robsion of Kentucky, Assistant Attorney General Shea noted that liability under the Act was "to be determined by the law of the situs of the wrongful act or omission. . . . [T]he law of the particular State is being applied." Hearings before House Committee on the Judiciary on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess. 35 (1942).

Senator Danaher of Connecticut reflected a similar understanding of the meaning of "the law of the place" when he asked Assistant Attorney General Holtzoff: "If we apply the rule of respondeat superior we should do it, should we not, on the basis of the law of the situs of the alleged tort?" Hearings before a Subcommittee of the Senate Committee on the Judiciary on S. 2690, 76th Cong., 3d Sess. 44 (1940). It was repeatedly asserted by members of both houses of Congress that liability was to be "determined under the local law."[5]

Supreme Court cases construing § 1346(b) lend support to a territorial interpretation of "law of the place." In *Hess v. United States*, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960), a worker was drowned in the Columbia River while working on the Bonneville Dam. Hess, the decedent's representative, argued that "the place" referred to the situs of the negligent act or omission, the dam itself.

The Court responded, however, that "place" in the FTCA means only "the politi-

---

The distinction is without significance here because, even assuming, in viewing the facts in the light most favorable to the plaintiffs, that the alleged negligent acts occurred within the zone of concurrent jurisdiction, the defendants are entitled to summary judgment as a matter of law. *See Yazzie v. Olney, Levy, Kaplan & Tenner*, 593 F.2d 100, at 102, No. 76–1451, slip op. at 666 (9th Cir. March 5, 1979).

4. *Cf. Richards v. United States*, 369 U.S. 1, 8, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962) ("Congress did not consider choice-of-law problems

during the long period that the legislation was being prepared for enactment.")

5. *See* Hearings before House Committee on the Judiciary on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess. 26. *See also id.* at 27, 30, 59, 61; S. Rep. No. 1196, 77th Cong., 2d Sess. 6 (1942); H.R. Rep. No. 2245, 77th Cong., 2d Sess. 9 (1942); H.R. Rep. No. 1287, 79th Cong., 1st Sess. 4 (1945); S. Rep. No. 1400, 79th Cong., 2d Sess. 32 (1946).

cal entity, in this case Oregon . . . ." *Id.* at 318 n. 7, 80 S.Ct. at 345. When the accident and the wrongful act or omission which allegedly caused it occurred within "the territorial limits of the State of Oregon," the Court noted "liability must . . be determined in accordance with the law of that place." *Id.* at 315, 318, 80 S.Ct. at 345. The Court apparently equated "place" with the state as defined by its political or territorial boundaries. *See Ira S. Bushey & Sons, Inc. v. United States*, 276 F.Supp. 518, 524 (E.D.N.Y.1967), *aff'd*, 398 F.2d 167 (2d Cir. 1968).

In *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962), the Court observed that

> where the negligence and the injury normally occur simultaneously and in a single jurisdiction, the law to be applied is clear, and no solution to the meaning of the words 'the law of the place where the act or omission occurred' is required.

The Court's reference to "a single jurisdiction" casts some doubt on its earlier equation of place with territorial limits. The Court recognized, however, that in requiring federal courts to apply the "law of the place," Congress thought in terms of "local law," "local tort law," "the locale of the injury or damage," and "the law of the situs of the wrongful act or omission." *Id.* at 14 n. 29, 82 S.Ct. at 594. The Court's citations to legislative materials confirm the suggestion in *Hess* that "place" means locality, a particular place, a definite region or a geographical position.

The view of place as referring to locality rather than jurisdiction also finds support in law which states that negligence occur-

ring in areas subject to federal jurisdiction, such as military installations, must be determined according to the law of the state in which the negligence occurs. "Place" cannot mean, in these circumstances, the law of the entity which has *jurisdiction* over the situs of the negligent act. *See, e.g., Orr v. United States*, 486 F.2d 270, 275 (5th Cir. 1973); *United States v. Schultz*, 282 F.2d 628, 631 (1st Cir. 1960); *Stewart v. United States*, 186 F.2d 627, 629–31 (7th Cir.), *cert. denied*, 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367 (1951); *Cole v. United States*, 249 F.Supp. 7, 11 (N.D.Ga.1965). We do not believe the Act should be construed differently under the facts of this case.[6]

■ Plaintiffs contend that extension of the meaning of "place" to include states having jurisdiction of the situs of the wrongful acts accords with the FTCA's purpose and with Congressional intent in granting concurrent jurisdiction. It is true that FTCA "was designed to build upon the legal relationships formulated and characterized by the States." *Richards v. United States*, 369 U.S. at 7, 82 S.Ct. at 589. But the legal relationships that arise by virtue of a Congressional grant of concurrent jurisdiction are objects of federal, not state, formulation.

The Supreme Court of Missouri articulated this distinction in *Sanders v. St. Louis & N.O. Anchor Line*, 97 Mo. 26, 10 S.W. 595, 597 (1889):

> By conferring "concurrent jurisdiction," congress [sic] intended by the act in question to declare that, *subject to the other*

---

**6.** Plaintiffs argue that *Jones v. Stocker*, 271 F.Supp. 437 (D.Or.1967), supports their interpretation of § 1346(b). *Jones* held that the United States District Court for the District of Oregon had jurisdiction under § 21(b) of the Longshoremen's and Harbor Workers' Act, 33 U.S.C. § 921(b), to enjoin enforcement of a compensation award to a longshoreman injured aboard a vessel afloat on the Washington side of the Columbia River. The Act requires that actions be "[instituted in] the Federal district court for the judicial district in which the injury occurred." The court noted, in construing the term "judicial district," that the "District of

Oregon is a jurisdictional entity, not a geographical one." *Id.* at 438.

The parties here do not question the district court's jurisdiction. Therefore, *Jones'* discussion of "judicial district" is inapposite.

Similarly, Supreme Court definitions of concurrent jurisdiction as meaning "jurisdiction of two powers over one and the same place" give no assistance in defining § 1346(b)'s "law of the place" requirement. *See Nielsen v. Oregon*, 212 U.S. 315, 319, 29 S.Ct. 383, 53 L.Ed. 528 (1909); *Wedding v. Meyler*, 192 U.S. 573, 584, 24 S.Ct. 322, 48 L.Ed. 570 (1904).

*laws of the United States*, transactions occurring anywhere on that river between the two states might lawfully be dealt with by the courts of either according to its laws, . . . . (Emphasis added.)

*See also Richards v. United States*, 369 U.S. at 7, 82 S.Ct. at 589–590 ("Congress, in waiving the immunity of the Government for tortious conduct of its employees, [can impose] restrictions and conditions on the extent and substance of its liability.")

■ The plaintiffs also contend that since a private person could be sued in Oregon court for negligence occurring within Washington's territorial limits, under § 1346(b) the United States should be treated likewise. This argument misconstrues the provision. The statute provides that "[t]he government shall be liable . . . if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." It is only after "the place" has been determined that the government shall become liable as a private claimant would become liable under that state's law.

■ We conclude that Washington law applies.

AFFIRMED.